NESTLE'S FOOD CO. (INC.) *v.* UNITED STATES (No. 3103) [1]

United States Court of Customs Appeals, January 9, 1929.

*Barnes, McKenna & Halstead (Samuel M. Richardson* and *Joseph Schwartz* of counsel) for appellant.

*Charles D. Lawrence*, Assistant Attorney General (*James R. Ryan* and *Fred J. Carter*, special attorneys, of counsel), for the United States.

[1] T. D. 43199.

452

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court denying claims for refund of duties as drawback.

It appears from the record that appellant filed in the office of the collector at the port of Seattle a written notice of intent to export 12,883 cases of condensed milk, with benefit of drawback. The purpose of the filing of such notice was to secure a refund of duties paid on certain imported sugar used in the production of the milk. The notice contained the information that the merchandise was to be shipped on the S. S. *President Jackson.* The merchandise was sent to Smith's Cove, Pier 41 East, at Seattle, for that purpose. A portion of the shipment—7,033 cases—was placed on board the *President Jackson* under the supervision of a customs inspector in charge of Pier 41. Due to telegraphic instructions from the officers of appellant, the witness, Morris Dean, head checker for the Admiral Oriental Line, instructed the witness, Morris D. Kennedy, "car clerk, port of Seattle, Piers 40 and 41," to transfer 5,850 cases of the merchandise to Pier 40 for shipment on the S. S. *Eldridge.* Customs Inspector H. C. Logan, in charge of Pier 41, was orally notified of the diversion by the witness, Dean; but, as neither the collector nor the customs inspector, William H. Shepherd, in charge of Pier 40, was notified of the diversion of the 5,850 cases, they were placed on board the S. S. *Eldridge* without Government inspection or supervision.

The collector liquidated the "drawback entry," allowing the claims for drawback on the merchandise shipped on the S. S. *President Jackson* and denying drawback on the merchandise diverted to the S. S. *Eldridge.*

The material portions of section 313 of the Tariff Act of 1922 read as follows:

SEC. 313. That upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * *. The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be identified, the quantity of such merchandise used and the amount of the duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, the agent of either, or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, *under such regulations as the Secretary of the Treasury shall prescribe.* (Italics ours.)

Pursuant to the authority conferred by section 313, the following regulations (Customs Regulations 1923) have been promulgated by the Secretary of the Treasury:

ART. 963. *Notice of intent to export—Local or direct exportation from a seaboard or frontier port.*—At least six hours, but not more than 90 days, before the lading of the merchandise to be exported, the claimant for drawback, or his duly authorized agent, shall file with the collector of customs at the port of exportation a notice of intent to export in duplicate on Customs Form 7511. A third copy of the notice of intent shall be delivered to the customs officer in charge at the place of lading at the time the goods are delivered to the exporting vessel or conveyance. Such notices of intent shall describe the merchandise by marks and numbers and state in detail the kind and contents of the packages, the quantity, weight (gross and net), gauge, or measure.

On receipt and acceptance at the customhouse of the notice of intent, the collector shall note thereon the date and hour of receipt and transmit one copy to the surveyor with the order to inspect and the other copy to the Comptroller of Customs.

The notice of intent may be indorsed as follows: "Collector of Customs:————. After the inspector's return is made, forward this document to the collector of customs at ——·—— (headquarters port only, to be indicated by exporter), where the entry for drawback will be filed." In such cases the notice of intent shall be filed in triplicate and the original and one copy thereof, after the return of the inspector and the date of clearance of the exporting vessel or conveyance have been indorsed thereon, shall be forwarded to the port where the entry is to be filed, as indicated by the exporter, the third copy, properly indorsed by the inspector, to be retained by the collector at the port of exportation as his record of the transaction.

ART. 969. *Diversion of shipments.*—Whenever the merchandise is diverted from the vessel or conveyance or from the place of lading named in the notice of intent, to another vessel or conveyance or to another place of lading, notice in writing of the change must be given to the collector or to the inspector before lading in ample time to secure inspection.

This article was amended May 7, 1925 (T. D. 40854), by the addition of the following:

Notice of diversion will be waived, however, in cases where it shall appear, to the satisfaction of the Secretary of the Treasury, that the shipment was diverted from the vessel named in the notice of intent to another vessel of the same line, or another vessel loading at the same pier or set of piers, without knowledge by the parties in interest, their agents or representatives, in time to file notice of diversion, provided that the merchandise was delivered at the pier in time for inspection and supervision of lading on the vessel named in the notice of intent.

ART. 970. *Inspection and supervision of lading.*—Upon receipt by the inspecting officer of the copy of the notice of intent accompanying the goods, or of the copy transmitted by the collector, he shall proceed to identify the packages and shall supervise the lading thereof on board the exporting vessel or conveyance.

The inspector shall note on the copy of the notices of intent received by him the date and hour of their receipt and shall certify thereon as to inspection and lading, and return all such notices of intent to the collector.

When no portion of the merchandise covered by a notice of intent to export is laden within 90 days from the date of receipt of such notice by the inspector, he shall return the notice to the collector with a report of all the facts relative thereto.

If the lading is begun within 90 days and is in progress at the expiration of that period, the notice shall be retained by the inspector until the lading has been completed, provided such lading is not discontinued.

It is claimed by appellant that section 313, *supra*, does not confer authority upon the Secretary of the Treasury to prescribe regulations on any matter other than the payments to be made to the exporter or other person named in the section, and that, therefore, the regulations involved in this suit—articles 963, 969, and 970—are invalid; that, if it should be held that the Secretary of the Treasury did have the authority to make the regulations, they should be liberally construed; and that, if they are so construed, it must be held that they have been substantially complied with.

On the other hand the Government contends that the Secretary of the Treasury had authority, by virtue of the provisions of section 313, to prescribe regulations for the following purposes, namely: First, to ascertain the amount and kind of imported merchandise used in the manufacture of articles to be exported; second, to determine whether the articles to be exported were manufactured or produced in the United States; and third, to determine whether or not such articles were actually exported. It is further claimed that all of the regulations affecting the issues in this case were reasonable and proper; that they have the force of law; that appellant failed to comply with such regulations; and that, therefore, it is not entitled to recover in this action.

It will be observed that section 313, *supra*, provides that when imported merchandise is used in the manufacture or production of articles in the United States, such articles may be exported from the United States, and that the duties paid on the imported merchandise, less 1 per cent, shall be refunded as drawback. However, it also provides that the imported merchandise used in the production of such exported articles shall be identified, the quantity used and the amount of duties paid thereon shall be ascertained, and "the facts of the manufacture or production of such articles in the United States and *their exportation therefrom shall be determined*, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, the agent of either, or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, *under such regulations as the Secretary of the Treasury shall prescribe.*" (Italics ours.)

It is the contention of counsel for appellant that the language, "under such regulations as the Secretary of the Treasury shall prescribe," relates to and modifies only that portion of the section relating to the payment or refund of duties. If this is so, then it relates only to that portion of the section which reads, "and the drawback due thereon shall be paid to the manufacturer, producer,

or exporter," etc. It is claimed that this construction is in accordance with the grammatical arrangement of the section.

While it is the general rule that a dependent or modifying clause relates to and modifies its nearest antecedent, such rule must yield, if to adhere to it would defeat the purpose of the Congress. Furthermore, for the purpose of ascertaining the intention of the Congress, the entire context of the statute must be considered and every effort made to give full force and effect to all language contained therein. *Lehn & Fink (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 359, T. D. 40519.) If we give consideration to these rules of statutory construction, it is evident that the Congress intended to give to the Secretary of the Treasury authority to prescribe regulations for the following purposes, namely: First, to identify the imported merchandise used in the manufacture or production of articles to be exported; second, to determine the quantity of such imported merchandise; third, to determine the amount of duties paid thereon; fourth, to ascertain whether the articles to be exported were manufactured in, and exported from, the United States; and fifth, to provide for the payment or refund of duties. It would seem to be just as important to prescribe regulations for determining whether or not articles are exported as to provide regulations pertaining to the payment or refund of duties. Such regulations would tend to avoid dispute, misunderstanding, and litigation. They would be as helpful to exporters and other interested parties as to the Government. To construe the section otherwise would defeat the evident purpose of the Congress. Furthermore, the provisions of section 313, *supra*, "must be construed as a governmental grant of a privilege," and any doubt in their construction resolved in favor of the Government. *Swan & Finch Co.* v. *United States*, 190 U. S. 143, 146; *Hannibal, etc., R. R.* v. *Packet Co.*, 125 U. S. 260, 271. We conclude, therefore, that the Secretary of the Treasury had authority to prescribe reasonable regulations for the purposes mentioned.

In the case of *Spencer, Kellogg & Sons (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459, we said:

Reasonable regulations of the Secretary of the Treasury made in pursuance of law, have the force and effect of law. *Penick & Ford (Ltd., Inc.)* v. *United States*, 12 Ct. Cust. Appls. 432, T. D. 40611, and cases therein cited; *Lunham* v. *United States*, 1 Ct. Cust. Appls. 220, T. D. 31258; *Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 439, T. D. 37009; *United States* v. *Bracher et al.*, 13 Ct. Cust. Appls. 432, T. D. 41344.

The appellant does not contend that the involved regulations of the Secretary of the Treasury are unreasonable, but contends that they have been substantially complied with. In our opinion, the regulations requiring notice of intent to export are mandatory and compliance therewith is a condition precedent to the right of the appellant to recover under the drawback provisions. Such regulations may not be disregarded and proof of exportation made in some other manner than that required by them. *Lunham* v. *United States, supra; Agency Canadian Car & Foundry Co.* v. *United States*, 10 Ct. Cust. Appls. 172, T. D. 38547;

*Agency Canadian Car & Foundry Co.* v. *United States,* 11 Ct. Cust. Appls. 19; T. D. 38637.

The appellant failed to file the notice of intent to export with the collector until after the merchandise had been laden. It failed to deliver a copy of such notice to the inspector.

The law was not complied with. The conditions precedent to the right of the appellant to refund of duties as drawback were not performed. ·

In the case of *Campbell* v. *United States, supra,* the Supreme Court held that, where the statute and the Treasury Regulations adopted in pursuance thereto had been complied with by an exporter of merchandise, "there resulted a contract that when exported the Government would refund, repay, pay back," the amount of duties assessed against the imported flaxseed used in the manufacture of the exported merchandise. In that case, the conditions precedent to the right of recovery had been performed. In this case, such conditions have not been performed; and in this vitally important respect, the cases are different.

Having in mind the principles announced in the *Spencer, Kellogg* case, *supra,* we may now give consideration to article 969, *supra.* It provides that whenever a shipment is diverted "to another vessel or conveyance or to another place of lading," notice in writing of the change must be given to the collector or to the inspector before lading in ample time to secure inspection. As amended, the article provides that such notice of diversion will be waived, when it shall appear to the satisfaction of the Secretary of the Treasury "that the shipment was diverted from the vessel named in the notice of intent to another vessel of the same line, or another vessel loading at the same pier or set of piers, *without knowledge by the parties in interest, their agents, or representatives,* in time to file notice of diversion, provided that the merchandise was delivered at the pier in time for inspection and supervision of lading on the vessel named in the notice of intent." (Italics ours.)

It is not claimed in this case that these regulations are not reasonable. It is claimed, however, that they have been substantially complied with. We can not agree that such is the fact. Appellant did not give notice of an intention to divert a portion of the involved shipment from the S. S. *President Jackson,* at Pier 41, to the S. S. *Eldridge,* at Pier 40, either to the collector or the inspector in charge of Pier 40. In fact, the only notice given to any customs official was that given orally by the witness Dean to the inspector in charge of Pier 41. Furthermore, the diversion of the shipment from the S. S. *President Jackson* to the S. S. *Eldridge* was ordered by the representatives of appellant. There is nothing in the record to indicate that they did not have knowledge of the diversion in time to have given notice as required by the regulations. It does not appear that the required notice was waived by the Secretary of the Treasury. It does appear, however, that that portion of the shipment diverted to the S. S. *Eldridge* was neither inspected by the customs officials nor placed on board the ship under their supervision. There is nothing in the record

to indicate that failure to inspect the merchandise and to supervise its lading on the S. S. *Eldridge* was due to the neglect or carelessness of any customs official.

Legal technicalities should not be given undue consideration, but the regulations under discussion are so obviously reasonable and fair, and so necessary to a proper determination of the matters mentioned in section 313, that, as we said in the *Spencer, Kellogg* case, *supra*, compliance with them is a "condition precedent to the right of the appellant to recover under the drawback provisions. Such regulations may not be disregarded *and proof of exportation made in some other manner than that required by them.*" (Italics ours.)

For the reasons stated the judgment is *affirmed*.