(C. D. 568)

FRANK P. DOW CO., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 11, 1941)

*Lawrence & Tuttle (George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an action against the United States in which the plaintiff seeks to recover a sum of money demanded and paid in connection with a 6-months' bond covering the importation of certain polo ponies and equipment at the port of Los Angeles, Calif., in November, 1935. It is claimed by the plaintiff that the amount of $98.30 paid upon one polo pony was improperly exacted because, it is alleged, said pony was exported within the extended term of the bond and such exportation was bona fide.

The provisions of the statute and the customs regulations thereunder applicable are as follows:

Tariff Act of 1930

SEC. 308. * * *

The following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation, which period may, in the discretion of the Secretary of the Treasury (whether such articles are imported before or after this section becomes effective), be extended, upon application, for a further period not to exceed six months:

* * * * * * *

(5) * * * saddle horses, all of which are brought temporarily into the United States by nonresidents for * * * the purposes of taking part in * * * specific contests;

* * * * * * *

PAR. 1607. Animals * * * brought into the United States temporarily for a period not exceeding six months, for the purpose of * * * competition for prizes offered by any agricultural, polo, or racing association; but a bond shall be given in accordance with regulations prescribed by the Secretary of the Treasury; * * *

Article 428 of the Customs Regulations of 1931 as amended by T. D. 45815 and T. D. 47042 and article 435, which were in force at the time of entry, read in part as follows:

Art. 428. * * *

* * * * * * *

(d) A bond shall be given on customs Form 7563, or a cash deposit equal to the estimated duty, may be accepted in lieu of the bond. Collectors will place such cash deposits in their special deposit accounts.

(e) Upon completion of the entry and the filing of the bond, or deposit of cash in lieu thereof, the articles may be released to the importer. Upon compliance with the conditions of the bond or at the expiration of the bonded period, the entry shall be liquidated free of duty, but with respect to any articles covered by the entry which are not disposed of in accordance with the conditions of the bond, the duty which would have accrued on such articles had they been entered for consumption and not in bond, shall be ascertained in the usual manner and noted on the entry for the purpose of computing and assessing liquidated damages.

## Article 435 of the Customs Regulations of 1931 provides:

(a) Articles entered under 6-months' bond may be exported at the port of entry or at another port and shall be delivered by the importer for examination at the appraiser's store or at such other place as the collector may designate. An application on customs Form 3495 shall be filed with the collector a sufficient length of time in advance of exportation to permit of their examination, and the articles must be identified as the same articles which were imported. The applicant will be notified on customs Form 3497 where the articles are to be sent for identification.

(b) Said application will be transmitted to the appraiser with the invoice filed on entry. The appraiser will compare the articles submitted to him with the invoice and report to the collector any discrepancies that may be found. He will also supervise the packing of the articles for exportation, and deliver the packages to an inspector for transfer and lading.

* * * * * * *

The facts as they appear of record are that 10 horses and equipment were entered under a 6-months' bond for exportation for the purpose of engaging in competitive polo exhibitions. Importation was made in the name of the Santa Barbara County Polo Association of Santa Barbara, Calif., for the account of Major Philip Magor. The plaintiff in this case is a firm of customs brokers, apparently acting as agents for the importer. One of the ponies, although it was exported within the term of the bond, as extended, was not exported under customs supervision.

Mr. William Tevis, a witness on behalf of the plaintiff, testified that he is a rancher engaged in the selling of horses and is also in the livestock business. He stated that he purchased the black gelding in question, called "Bomba," in the United States from Major Philip Magor on April 17, 1936, and took delivery at Santa Barbara, and that this horse was later sold by him to one Angel Elizalde who resided in the Philippines and it was exported from the port of San Francisco to the port of Manila, a month or two after it was purchased from Major Magor.

On cross examination the witness for the plaintiff admitted that he didn't actually see the horses arrive from South America but that he bought a horse named "Bomba" and that it was a South American horse. However, the whole file transmitted to the court by the collector of customs was admitted in evidence without objection and this indicates that the black gelding "Bomba" was imported and was also exported.

Inasmuch as it is admitted that the horse was not exported under customs supervision it is clear that the regulations were not complied with. These regulations are reasonable, are provided for in the statute, and have the force of law. Compliance therewith is a condition precedent for recovery under the statute.

The claim of the plaintiff that the exaction was in error cannot be sustained for the further reason that the evidence shows that this black gelding was sold by the owner while it was still in the United States. The object of the statute is to exempt from payment of duty merchandise which will not enter into the commerce of this country and so compete with the products of the United States. This was held by the court in the case of an importation of dress models entered under bond. *Pelzgreenstein Co.* v. *United States*, 17 C. C. P. A. 305, T. D. 43718. There the court at p. 308, stated:

By section 308, Congress provided for the admission of a number of articles under bond without the payment of duty, if exported within six months from the date of importation. Congress intended that American citizens might have the advantage of certain uses of these articles temporarily without paying the duty upon the goods which would ordinarily be taxed, if imported for consumption and intended for entry into the commerce of the United States. It was specially provided in the section, however, that goods were not to be "imported for sale or for sale on approval," and that they were to be exported within six months.

   \*     .\*     \*   .   \*     \*     \*     \*

The court in that case further held:

\* \* \* When the goods were brought into this country it was not intended that they should go into commerce, \* \* \*
\* \* \*. The generous privileges granted by Congress in the two sections, *supra*, were granted for special purposes, and, for the importer to be entitled to these privileges, he must bring himself not only within the letter but within the spirit of the provisions, and in determining whether or not he has done so, as applied to these two particular sections, it is the settled rule that any doubt in the construction of the same must be resolved in the favor of the Government. *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199,
. \* \* \* \* \* \* \*

The importer herein has not brought himself within either the letter or the spirit of the provision, in that it has not been shown that this horse was not "imported for sale." As was said by Chief Justice Marshall in the case of *Brown* v. *Maryland*, 12 Wheat. 419, 442, 6 L. ed. 686:

\* \* \* The object of importation is sale; it constitutes the motive for paying the duties; \* \* \*. Duties \* \* \* are charged on those articles only which are intended for sale or consumption in the country. Thus, sea stores, goods imported and re-exported in the same vessel, goods landed and carried over land for the purpose of being re-exported from some other port, goods forced in by stress of weather, and landed, but not for sale, are exempted from the payment of duties. The whole ·course of legislation on the subject shows that, in the opinion of the legislature, the right to sell is connected with the payment of the duties.

In the case of *G. A. Klein* v. *United States*, 66 Treas. Dec. 297, T. D. 47281, the court had before it a quantity of rye grass seed which had been entered under bond and had been found to be prohibited merchandise. A portion of the seed, apparently through inadvertence, had entered the commerce of the United States. The court held that inasmuch as that portion did actually enter into commerce and was sold, duty was assessable thereon.

The importer in the case now under consideration was granted the privilege of free entry ·for this horse because it was not imported for sale. By reason of the fact that it was sold in this country it lost its character as merchandise that would not enter the commerce of the country, for by such sale it entered into competition with horses which were either the product of the United States or imported horses upon which duties had been paid by the importer. To allow free entry in such a case would be to defeat the purpose of the statute.

We therefore find that the collector acted within the law in demanding the payment complained of, first because the regulations were not complied with and second for the reason that the horse was sold in this country. Plaintiff's claims are overruled.

Judgment for defendant. It is so ordered.