UNITED STATES *v.* W. C. HARDESTY Co., INC. (No. 4598)[1]

United States Court of Customs and Patent Appeals, January 5, 1949

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

*John D. Rode* for appellee.

[Oral argument December 9, 1948, by Mr. Weeks and Mr. Rode]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, C. D. 1092, sustaining the protest of the im-

[1] C. A. D. 396.

porter, appellee, claiming "drawback" upon 125 bags of stearic acid and 13 drums of oleic acid exported from the United States to Canada.

The authority for the refund of duties, as drawback, paid upon the imported merchandise used in the manufacture or production of articles for exportation is contained in section 313 (a) and (i) of the Tariff Act of 1930. The subsections of section 313, *supra*, read:

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, except that such duties shall not be so refunded upon the exportation of flour or by-products produced from wheat imported after ninety days after the date of the enactment of this Act. Where two or more products result from the manipulation of imported merchandise, the drawback shall be distributed to the several products in accordance with their relative values at the time of separation.

(i) REGULATIONS.—The Secretary of the Treasury is authorized to prescribe regulations governing (1) the identification of imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties, the ascertainment of the quantity of such merchandise used, of the time when such merchandise was received by the manufacturer or producer of the exported articles, and of the amount of duties paid thereon, the determination of the facts of the manufacture or production of such articles in the United States and their exportation therefrom, the time within which drawback entries on such articles shall be filed and completed, to entitle such articles to drawback, and the payment of drawback due thereon; (2) the identification of merchandise withdrawn for consumption and returned to customs custody for exportation, the determination of the facts of nonconformity thereof to sample or specifications and of exportation thereof from the United States, and the payment of the drawback due thereon; * * *

The merchandise was exported from the United States in December 1945.

The provisions of the Customs Regulations of 1943 pertaining to drawback, insofar as they are pertinent to the instant case, are contained in section 1.8, as amended September 28, 1945, T. D. 51321; section 22.7, subsections (a) and (d), as amended June 20, 1945, T. D. 51254, and subsection (e); and in section 22.15. They read:

**1.8 Hours of business.**—(a) Except as hereinafter specified, each customs office shall be open for the transaction of general customs business between the hours of 8:30 a. m. and 5 p. m. on all days of the year except Saturdays, Sundays, and national holidays.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

**22.7 Notice of intent to export; local or direct shipments from a seaboard or frontier port.**—(a) At least 6 hours, but not more than 90 days, before the lading of merchandise which is to be exported from a seaboard or frontier port as a local or direct shipment therefrom, the drawback claimant or his agent shall file with the collector of customs at such port a notice of intent to export on customs Form 7511 in duplicate. A copy of the notice of intent shall also be delivered to the customs officer in charge at the place of lading at the time the merchandise is delivered to the exporting carrier. Such notices of intent shall show the name of

the exporting vessel or other carrier, the place of lading, the kind of packages and their marks and numbers, the description of the merchandise, and its weight (gross and net), gauge, measure, or number. If the merchandise is to be exported in railroad cars, a notice of intent shall be filed for each car.

(*d*) A failure to file a notice of intent with the collector, or a failure to deliver a copy to the customs officer at the place of lading shall not bar the allowance of drawback if either of such requirements of paragraph (*a*) was complied with and no other act or omission of the exporter, carrier, or agent of either resulted in a failure to obtain customs inspection. If neither a notice of intent was so filed nor a copy was so delivered, drawback shall be allowed on the involved merchandise only if specifically authorized by the Bureau.

(*e*) When merchandise is to be exported otherwise than by sea and drawback will be claimed, the carrier shall notify the proper customs officer at the port of exit of the arrival and point of departure of the merchandise before it leaves the United States. If such notice was not given and there was no customs inspection of the shipment for drawback purposes, drawback shall not be allowed.

**22.15 Failure to obtain inspection and supervision of lading.**—Whenever the inspecting officer is unable to certify to the inspection and supervision of lading of the merchandise covered by a notice of intent, he shall examine the records of the delivering and exporting carriers for the purpose of verifying the particulars stated in the notice of intent and make his certificate accordingly, whether or not the notice of intent was timely. In such cases the certificate of the inspector shall be accepted as sufficient evidence of lading and the drawback shall be allowed, provided the notice of intent was timely, the regulations were otherwise complied with, and the failure to inspect was not the fault of the exporter, the carrier, or an agent of either.

It appears from the record that the exported merchandise was received at Dover, Ohio, on December 21, 1945, for export to Canada through Port Huron, Michigan; that on December 19, 1945, a notice of intent to export for benefit of drawback was mailed in New York by appellee's customs broker to the Collector of Customs at Port Huron; that the notice was received at the Port Huron post office on Friday, December 21, 1945, at 6 p. m., after the customs office was closed for the day; that, as the customs office was closed on Saturday, December 22, and Sunday, December 23, the notice was not received by the collector until Monday, December 24, sometime after 8:30 a. m. and before 12:30 p. m.; that the collector forwarded the notice to the customs officer in charge at the place of lading and that it was received by that officer on December 26 at 8 a. m. It further appears that the customs officer in charge at the place of lading reported that the merchandise had been laden for export on December 24 at 8 a. m., before the notice of intent was delivered to the collector, and that as no notice of intent to export had been received by the customs officer prior to shipment, the merchandise had not been inspected.

On September 6, 1946, the request for drawback on the merchandise here involved was denied by the Collector of Customs, pursuant to a letter from the Commissioner of Customs dated May 14, 1946. In that letter attention was called to the fact that the intent to export for benefit of drawback was not timely filed; that the merchandise

was not inspected nor laden under the supervision of the lading inspector; and that the carrier had not notified the proper customs officer at the port of exit of the arrival and point of departure of the merchandise before it left the United States, as required by section 22.7 (e) of the Customs Regulations. A similar letter by the Commissioner of Customs was filed in accordance with a subsequent request by the importer, affirming the commissioner's decision of May 14, 1946.

It is evident that as the intent to export for benefit of drawback was not timely filed, either with the collector of the customs officer in charge at the place of lading, in accordance with the Customs Regulations, and as the carrier failed to comply with the Customs Regulations hereinbefore quoted, and as the merchandise was not inspected as required by the Customs Regulations, drawback was denied.

The trial court sustained the protest apparently upon two grounds; namely, (1) that there should have been access by the Post Office Department to the customs office so that the notice of intent could have been filed with the collector, or with someone authorized by him to receive the notice of intent, on Saturday morning, December 22, and (2) that the last sentence in section 22.7 (d), *supra*, which provides that "If neither a notice of intent was so filed nor a copy was so delivered, drawback shall be allowed on the involved merchandise only if specifically authorized," confers upon the Bureau of Customs the power to authorize drawback regardless of whether or not notice of intent is filed under the other provisions of that section; that the quoted provision waives the filing of the notice of intent with the collector and the delivery of the copy thereof to the customs officer at the place of lading; that the regulations are not uniform in operation; and as they are not uniform, that is, they do not apply to all alike, they are not mandatory, but directory only. In support of its views, several authorities were cited and relied upon.

In its decision, the court stated that it did not

mean to be understood as suggesting that customs offices should be held open 24 hours a day, 7 days a week, on the chance that someone might wish to file a notice of intent within the limit of time set by the regulation, i. e., 6 hours before merchandise is laden for exportation. It is a well-known fact, however, that exportation, as well as importation, of merchandise may take place at any hour of the day or night, and that the customs service does not cease to function merely because the business office of the collector is closed for the day. In this case it plainly appears that had there been access to the collector's office the notice of intent would have been delivered on Saturday morning, December 22, well within the limit set by the regulations for timely notice. Under these circumstances, we are of the opinion that the notice was not untimely, and that the requirement of the regulations was met.

Although the court quoted section 22.7 (e), *supra*, it made no other reference thereto in its decision. It may be, as stated in the decision

of the trial court, that the customs office should have been open on Saturday, December 22, so that the notice of intent might have been delivered, but the fact remains that the notice of intent was not delivered until Monday, December 24, apparently at sometime after 8:30 a. m. and before 12:30 p. m. and that no copy of the notice was delivered to the customs officer at the place of lading until 8 a. m., December 26, and that the exported merchandise was not inspected. (It will be observed that, in accordance with the quoted portion of section 1.8, *supra*, and so far as we are aware, the customs office at Port Huron was duly and properly closed on Saturday and Sunday, December 22 and 23, 1945.)

Subsection (*d*) of section 22.7, *supra*, provides that failure to deliver the notice of intent with the collector or, in the alternative, to deliver a copy to the customs officer in charge at the place of lading, shall not bar the allowance of drawback if either of the requirements provided for in section 22.7, *supra*, was complied with and "no other act or omission of the *exporter, carrier, or agent of either* resulted in a failure to obtain customs inspection." (Italics supplied.) It will be noted that the last sentence of that subsection reads: "If neither a notice of intent was so filed nor a copy was so delivered, drawback shall be allowed on the involved merchandise only if specifically authorized by the Bureau." However, subsection (*e*), hereinbefore quoted, provides that "When merchandise is to be exported otherwise than by sea and drawback will be claimed, the carrier shall notify the proper customs officer at the port of exit of the *arrival and point of departure of the merchandise before it leaves the United States*." (Italics supplied.) It will be observed that that subsection further provides that if such notice be not given and *there be no customs inspection of the shipment for drawback purposes*, drawback shall not be allowed.

It appears in this case that the notice of intent to export the involved merchandise was not filed with the collector until after the merchandise had been laden on board the carrier; that no notice was timely served upon the customs officer in charge at the place of lading; that the carrier, a railroad in the instant case, did not notify the proper customs officer at the port of exit of the arrival and point of departure of the merchandise before it left the United States, as required by subsection (*e*) of section 22.7, *supra*; and that there was no customs inspection of the merchandise here involved for drawback purposes.

It is evident that the last sentence in subsection (*d*) of section 22.7, *supra*, does not legally authorize the Bureau of Customs to grant drawback where no inspection of the exported merchandise has been had, as provided in subsection (*e*), *supra*. Furthermore, it will be observed that section 22.15, *supra*, is in harmony with the other provisions of the quoted regulations in that it provides that a certificate of inspection shall be accepted as sufficient evidence of lading "pro-

vided the notice of intent was timely, the regulations were otherwise complied with, and the failure to inspect was not the fault of *the exporter, the carrier, or an agent of either.*" (Italics supplied.) The only authority for allowing drawback without inspection of imported merchandise is provided for in section 22.15, *supra*, and then only when it is not the fault of the exporter, the carrier, or an agent of either.

Owing to the fact that no notice of intent to export was duly or properly filed with the collector at Port Huron or with the customs officer in charge at the place of lading, and as no inspection was actually had, solely because of the failure of the exporter, the carrier, or an agent of either, we are of opinion that drawback was properly disallowed.

We are not in agreement with the trial court or with counsel for appellee that the quoted regulations are not mandatory but only directory. On the contrary, we are of opinion that the quoted regulations are mandatory and that a compliance therewith is a condition precedent to the right of recovery of drawback. See *Spencer, Kellogg & Sons (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 612, T. D. 41459, *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T. D. 43199, and *United States* v. *Ricard-Brewster Oil Co.*, 29 C. C. P. A. (Customs) 192, C. A. D. 191.

For the reasons stated, the judgment of the United States Customs Court is *reversed*.