(C. D. 1198)

AMERICAN PISTACHIO CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 13, 1949)

*Sharretts & Hillis* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: This protest is directed against the action of the collector of customs in refusing to allow drawback under the provisions of section 313 (c) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1313 (c)) on the exportation of certain molasses imported from Syria which, it was claimed, did not conform to the specifications of the importer's order.

The statutory provisions relied upon read as follows:

SEC. 313. DRAWBACK AND REFUNDS.

\* \* \* \* \* \* \*

(c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICATIONS.—Upon the exportation of merchandise not conforming to sample or specifications upon which the duties have been paid and which have been entered or withdrawn for consumption and, within thirty days after release from customs custody, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

There does not seem to be any dispute but that the imported merchandise consisted of ninety-two 5-gallon tins, each containing about 60 pounds of fluid, light-colored grape sirup molasses, having a

high sugar content. Nor is there any dispute that as imported the merchandise was packed in old, reused cans and that some of the cans were leaking.

The molasses was imported at the port of Philadelphia on March 28, 1946, and was released from customs custody at that port on April 4, 1946. Because of its leaking condition, it was repacked at the premises of the importer in New York City into 89 of the cans, which were resoldered, and each can was placed in a new wooden box, the 3 remaining empty tins being placed into 3 cartons. Application to export the merchandise under the provisions of section 313 (c), *supra*, as not conforming to specifications was made to the collector of customs at the port of New York, and it was returned to customs custody on May 3, 1946, within the 30-day period prescribed in the statute. No question is raised that it was subsequently exported.

Sections 22.35 to 22.39, inclusive, of the Customs Regulations of 1943 were prescribed by the Secretary of the Treasury to govern the allowance of drawback with respect to merchandise not conforming to sample or specifications. The particular regulations which come into question in this case are those contained in section 22.36 (b), which read as follows:

(b) The application [of the claimant for drawback] shall be accompanied by a copy of the order for the merchandise, copies of any preliminary correspondence, and the samples or specifications on which the merchandise was ordered, and shall contain a sworn statement by the importer that the sample or specifications submitted are those on which the merchandise was ordered, showing in detail in what manner the merchandise does not conform to the sample or specifications. If no written order was placed and no sample or specifications are available, a sworn statement of the importer setting forth his oral specifications may be accepted. In doubtful cases the collector, before liquidation of the entry, may require that such oral specifications be corroborated by the shipper.

It appears that the merchandise was ordered verbally by the general manager and president of the plaintiff corporation while he was on a business trip in Syria, and as a consequence no sample or written specifications existed. Apparently in compliance with the requirement of the regulations that in the absence of a sample or written specifications "a sworn statement of the importer setting forth his oral specifications may be accepted," the following, which was offered and received in evidence as defendant's exhibit 5, was supplied to the collector by the applicant for drawback:

April 24, 1946

Collector of Customs
Philadelphia, Pa.

Dear Sir:

This is to advise you that, when the writer was in Syria, about a year ago, he placed an order verbally, with the shippers of the molasses, namely, Levant Trading Company of Aleppo, Syria, to buy and ship, as soon as possible, up to

100 tins of dark color molasses, which must be solid so that it does not leak, and that same should contain low sugar test, and it should be packed in new tins of 1 kilogram net each.

> Respectfully yours,
> AMERICAN PISTACHIO CORPORATION
> F. Coussa
> President

Sworn to before me this 24th day of April, 1946.

> Henry Kleinberg, Notary Public.

The applicant was advised by the collector that a confirmation of the order from the foreign shipper would be required, and some time later turned over to the collector the following communication on the letterhead of the Levant Trading Co. of Aleppo, Syria:

American Pistachio Corporation,        Aleppo, February 7, 1947
111 Reade St.,
New-York 13, N. Y.

Dear Sirs:

We regret to learn that you were not satisfied and that you refused the 92 (ninety two) tins of molasses that you ordered from us and which we shipped by the S/S Thomas Say early in 1946.

We are sorry but we could not get any better quality nor any small size tins the way you ordered.

It will be in order to ship the goods to Canada and to sell the same for our account.

> Truly yours,
> Levant Trading Company
> Antoine Ishkan

This communication, the original of which was received in evidence at the trial of the issue as defendant's exhibit 7, was rejected by the collector as corroboration of the oral specifications for the reason, according to the official papers transmitted to this court with the protest, "that while it did state the number of tins it failed to state the size of the tins or the quantity of molasses ordered and the other specifications outlined in Mr. Coussa's affidavit of April 24, 1946" (exhibit 5).

On August 25, 1947, the plaintiff filed with the collector another communication from the shipper reading as follows:

American Pistachio Corporation,        Aleppo, August 13, 1947
111 Reade St.,
New-York, N. Y.
U. S. A.

Dear Sirs:        Att: Mr. F. Coussa

As per your request, we are rushing to confirm your order given to us in 1944 when your Mr. Coussa was here for 900 tins of 3 kgs each or their equivalent in one kg. each tin of solid dark low sugar test molasses.

We are sorry you had so much trouble but we did the best we could at that time.

> Faithfully yours,
> Levant Trading Company
> Antoine Ishkan

A tabulation of the specifications as contained in the sworn statement filed in connection with the application for drawback, and the letters of the shipper of February 7, and August 13, 1947, offered as corroboration, would show the following details:

| Detail | Sworn Statement | Letter of Feb. 7, 1947 | Letter of Aug. 13, 1947 |
|---|---|---|---|
| Time of order: | About April 1945 | Not given | 1944 |
| Quantity: | Up to 100 tins | 92 tins | 900 tins |
| Size of tins: | 1 kilogram net | Small size | 3 kilograms or equivalent in 1-kilogram tins |
| Type of tins: | New | Not given | Not given |
| Color of molasses: | Dark | Not given | Dark |
| Type of molasses: | Solid | Not given | Solid |
| Sugar test: | Low | Not given | Low |

It will be seen that although with respect to the details of the molasses itself the specifications shown in the sworn statement were fully corroborated by the shipper, there were discrepancies with respect to the time of the order and the amount ordered. Considering that the imported merchandise actually was in 5-gallon, or 60-pound (roughly 25-kilogram) tins, the discrepancy between the sworn statement and the shipper's letters as to size of tins is not so great. There was no corroboration as to the character of the tins as new.

Drawback was denied on the ground that satisfactory corroborated evidence as to the specifications as required by section 22.36 (b), supra, had not been furnished to the collector.

The issue as viewed by the plaintiff is simply a question of fact as to what the oral specifications for the merchandise were and whether the imported merchandise conformed to those specifications, and it is contended that there is ample proof in the record of these facts.

The defendant, on the other hand, denies that the issue is whether or not, in fact, the imported merchandise did conform to the oral specifications, but contends that it is whether the collector had sufficient proof before him as to what the specifications actually were.

The nub of the issue is the effect to be ascribed to the regulation that—

* * * In doubtful cases the collector, before liquidation of the entry, may require that such oral specifications be corroborated by the shipper.

The defendant maintains that compliance with this regulation is mandatory and that the various communications from the shipper quoted above did not constitute corroboration of the oral specifications as given by the plaintiff in the sworn statement, exhibit 5. On its part, the plaintiff contends that the regulation is not mandatory in character, but directory only, and that proof of a state of facts conforming to the requirements of the statute may be made in this court. Further, it is contended that whether or not the regulation is mandatory it is unreasonable and hence invalid since it requires the claimant for drawback to produce corroboration from persons over whom he has no control.

We are satisfied from a reading of the statute and of the regulation that the particular requirement with which we are here concerned, i. e., "In doubtful cases the collector, before liquidation of the entry, may require that such oral specifications be corroborated by the shipper," was obviously prescribed by the Secretary of the Treasury as an intended exercise of the authority contained in section 313 (i) of the tariff act giving him power to prescribe regulations governing "the determination of the facts of nonconformity thereof [of imported merchandise] to sample or specifications." Under the well-settled rule with respect to regulations prescribed under such authority, the regulation in question must be held to be mandatory in character if it does not appear that it is either unreasonable or inconsistent or out of harmony with the statute. *United States* v. *Richard-Brewster Oil Co.,* 29 C. C. P. A. 192, C. A. D. 191.

A careful examination of the regulation itself, section 22.36 (b), *supra,* is therefore in order. It provides that where written specifications or an order and/or a sample exist they are to be furnished to the collector upon an application for drawback, and where no written order or specifications exist a sworn statement of the importer is to be furnished. It is only in cases where the collector is not satisfied with the sworn statement as to the oral specifications that he is empowered to go further and require corroboration. We think, however, that to the extent that it prescribes a single, exclusive manner of proof in doubtful cases, i. e., corroboration by the shipper, the regulation is unreasonable.

The privilege of exporting with benefit of drawback imported merchandise not conforming to sample or specification is an exception to the general tariff policy granted by Congress. The acquisition of the benefit of that privilege is conditioned upon compliance with regulations prescribed by the Secretary of the Treasury for the administration of that provision of the law. Those regulations, however, must be regulative and not prohibitive. *United States* v. *Morris European & American Express Co.,* 3 Ct. Cust. Appls. 146, 149, T. D. 32386.

In the very nature of the situation, the need for corroboration of oral specifications by the shipper in a drawback matter such as is here involved would arise only after importation and receipt of the goods here, and presumably after payment therefor had been made. In such a case the shipper, as pointed out by the plaintiff, is not under the control of the importer—in fact, because of the rejection of the goods he might well be hostile to the interests of the importer. Corroboration by him at that time might necessarily entail an admission of the faultiness of the shipment which he would not wish to make. Certainly corroboration by the shipper would require a voluntary act on the part of one whose cooperation could not be compelled. To

tie the fulfillment of the statutory grant of the privilege of drawback to the cooperation of such a person appears to us to be unreasonable and contrary to the letter, spirit, and intent of the drawback law.

In the case of *United States* v. *Conkey & Co.*, 6 Ct. Cust. Appls. 487, T. D. 36122, a similar situation arose. There, section 5 of the Panama Canal Act (ch. 390, 37 Stat. 560) granted free entry to materials necessary for the construction or repair of vessels built in the United States or for the building or repair of their machinery or for their outfit and equipment, and the Secretary of the Treasury was authorized to prescribe regulations for the administration of that provision of law. The regulations promulgated by that officer (which are to be found in T. D. 32956) prescribed an exclusive method of proof of use by the affidavit of the master builder, general storekeeper, or superintendent of the vessel on which the material in question was used.

The material involved in that case, glue, was furnished to the Boston Navy Yard, and the efforts of the drawback claimant to secure from the proper officer the affidavit required by the regulations were unavailing. In holding the regulation to be unreasonable, our appellate court said:

Before the first proposition of the Government can be sustained, therefore, it must be found that the regulation of the Treasury Department relied upon is reasonable; and to that conclusion we can not persuade ourselves, in view of the fact that under the regulation the affidavit of the master builder, general storekeeper, or superintendent becomes exclusive evidence of the use to which the goods were actually put, and the production of the prescribed evidence is left wholly dependent, not on the will of the importers but on that of a stranger to the importation, who is entirely free to do as he pleases in the matter. In this case the person designated by the regulation to make the affidavit therein provided for refused to furnish it and based his refusal not on the ground that the goods were not used as claimed, but on orders of the Navy Department which forbade compliance with the request of the importers and to which he could not deny obedience without peril to himself. And so we find in the present issue that one department of the Government prohibited the giving of information which another department exacted by regulation as a condition precedent for the free entry of goods which it was the intention of Congress to admit free if used in the construction or repair of American-built vessels. A regulation which actually brings about such an anomaly as that, which leaves the importers' right to the mercy and good will of persons not identified with the importation or subject to importers' control, which admittedly obliges the keeping of no record showing the purpose to which the merchandise was devoted, and which of necessity must result in an unequal application of the law and in a discriminatory classification of goods of the same identical kind, imported in the same identical way, and actually used for the same identical purpose, is, in our opinion, unreasonable and therefore invalid.

We think the analogy of the situation in that case to that in the case at bar is complete. Since the regulation, here in question, insofar as it requires corroboration by the shipper, is unreasonable, it is

invalid, and it follows that our inquiry now is whether the plaintiff has established in this court such facts as bring its claim within the requirement of the statute. *United States* v. *Conkey & Co., supra.*

The oral testimony of the single witness called, the general manager and president of the plaintiff corporation who ordered the merchandise, satisfactorily explains the discrepancies which, among other things, caused the collector to reject the claim. The 6-month discrepancy between the date of the order as given in the sworn statement filed in connection with the application for drawback and the August 13, 1947, letter of the shipper is shown to have been an error on the part of the witness, who, by checking with his passport, placed the time of the order as the last week of November or the first week in December 1944. The letter of the shipper referring to "900 tins of 3 kgs each or their equivalent in one kg. each tin" is shown to have been an error or misunderstanding on the shipper's part. It was established that there was but one transaction between the plaintiff and the shipper, which is the one here involved.

Upon the record as made we are satisfied that all of the requirements of the statute were met in this case. The protest is therefore sustained and judgment will issue directing the collector to reliquidate the entry allowing drawback accordingly.