BEFORE THE FIRST DIVISION, JUNE 30, 1964

No. 68702.—Johnson Motors, Inc., and J. T. Steeb & Co., Inc., et al. *v.* United States, protests 62/3172, etc. (Seattle and Los Angeles).

OLIVER, Chief Judge:   The protests enumerated in schedule "A," hereto attached and made a part hereof—all of which were consolidated on motion by plaintiffs and without objection from defendant—are directed against actions of the collectors of customs at Seattle and Los Angeles in refusing to allow drawback under the provisions of section 313(c) of the Tariff Act of 1930, as amended by T.D. 53318, on the exportation of certain motor scooters, imported from England, which, it was claimed, did not conform to the prototype sample, upon which the order of the importer, Johnson Motors, Inc., of Pasadena, Calif., was based.

Section 313(c), as amended, *supra*, reads as follows:

Sec. 313.   DRAWBACKS AND REFUNDS.

\*         \*         \*         \*         \*         \*         \*

(c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICATIONS.—Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the

duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

The sole witness who appeared herein is the assistant general manager and technical advisor of the importer corporation. His duties as general manager include the purchase of merchandise, and, in this connection, he familiarizes himself with the merchandise, either through technical written specifications or "by prototype models, if it is a particular vehicle, a prototype sample of it." (R. 5.) Prior to his employment with the importer of the present merchandise, the witness was associated with motorcycles in the professional racing field and in the construction of special motorcycles for his own use. He also worked for aircraft firms as an aeronautical engineer, supervising the maintenance of aircraft.

Referring specifically to the motor scooters upon which drawback is claimed, the witness testified that he became familiar with such vehicles in December 1958 when a prototype model was flown over from England by the exporter, for the purpose of putting it "through various tests, to check its performance and capabilities." Different tests conducted on the prototype model were satisfying, as stated by the witness, that "the motor scooter in comparison with other motor scooters on the market performed very nicely, and we had no mechanical problems with it whatsoever during the test period" (R. 8), and "so an order was mailed to Triumph Engineering Co., in England, for the purchase of a small quantity of the scooters." The order (defendant's collective exhibit A), that included the merchandise under discussion, shows a quantity of 315 Triumph 1959 model scooters. The witness explained that only 151 were received by the importer; the remainder were never shipped. Following sales to dealers in various Western States, the imported motor scooters were found to have two basic mechanical defects. They were equipped with a "very bad clutch, which gave no end of trouble," and the engine, located under the seat, overheated so that "it was unbearable to ride the vehicle." (R. 9.) The deficiences that existed in the imported scooters were not encountered in the prototype sample, upon which the tests, heretofore referred to, were made, and that formed the basis for the purchase of the imported vehicles.

Counsel for defendant, in his brief, cites *Carl Matusek Shipping Co., Inc., et al.* v. *United States*, 51 Cust. Ct. 8, C.D. 2406. While the protest involved therein was directed against the refusal of the collector to allow drawback, the issue was limited to a determination of whether there had been compliance with pertinent customs regulations. No such question is before us in this case. Counsel for the respective parties stipulated, in the course of the trial, that "the Customs Regulations with regard to drawback have been complied with in the four entries that were consolidated for trial." (R. 14.) The cited case has no bearing on the present one.

Defendant's brief also refers to a line of cases that emphasized requirements of proof for a plaintiff to obtain relief under the drawback statute. *American Pistachio Corp.* v. *United States*, 23 Cust. Ct. 103, C.D. 1198; *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T.D. 43199; *United States* v. *Holt*, 17 CCPA 385, T.D. 43822; and *Export Petroleum of Calif., Ltd.* v. *United States*, 64 Treas. Dec. 313, T.D. 46659. Each of those cases reached a conclusion based upon a factual situation that was materially different from that in the present case. Here, we are satisfied that plaintiffs have established that the motor scooters, on which the claim for drawback is based, did not conform to the prototype sample that was supplied by the foreign exporter, and which had proved to be satisfactory following tests for performance and capability.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold that plaintiffs are entitled to allowance for drawback, under the

provisions of section 313(c), as amended, *supra*, on the motor scooters covered by the entries involved herein.

The protests are sustained and judgment will be rendered accordingly.