(C. D. 1359)

CIBA COMPANY, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided August 17, 1951)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.*, of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Jerome Vale* and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: On March 21, 1947, the plaintiff in this case imported 1,620 bags, containing 216,579 pounds of naphthalene, on

which duty was paid at the rate of 20 per centum ad valorem plus 3½ cents per pound under the provisions of paragraph 27 (a) (1) of the Tariff Act of 1930, as modified by the Belgian Trade Agreement, T. D. 47600. Subsequently, at some time in the month of April 1947, the exact date of which is not revealed in the record, 214,606 pounds of the said imported naphthalene were delivered to the plant of the Calco Chemical Division of the American Cyanamid Corp. at Bound Brook, N. J., for the purpose of manufacturing or producing certain beta naphthol with the use of the said imported naphthalene.

It is disclosed by the record that the aforesaid 214,606 pounds of naphthalene were the only *imported* naphthalene used in the plant of the Calco Chemical Division during the month of April 1947, in the production of beta naphthol. During the same month, a total of 2,133,215 pounds of *domestic* naphthalene was also processed into beta naphthol, making the total amount of naphthalene processed in the said plant during the month of April 1947, 2,347,821 pounds.

It appears that the process of producing beta naphthol from naphthalene in the said plant was a continuous process, that is to say, the plant ran 24 hours a day, 7 days a week, and during the month of April 1947, was shut down only 1 day. One of the witnesses for the plaintiff was the representative of the chemical department of the Calco Chemical Division of the American Cyanamid Corp., who was familiar with the processing of naphthalene into beta naphthol and with the facts of this case. He stated that because of the fact that the demand for beta naphthol was considerably greater than the production capacity of the plant, it was not, at the time of the processing of the imported naphthalene here in question, practical and economically feasible to process the said imported naphthalene separately from the domestic naphthalene, as this would have meant shutting down the plant to clean out all the domestic material within the plant, with a consequent reduction in the production capacity of the plant.

The record shows that during the month of April 1947, 2,013,570 pounds of beta naphthol were produced by the plant, of which 184,088½ pounds were turned over to the plaintiff, which subsequently exported the same. Claim for drawback of 99 per centum of the duties paid on the imported naphthalene was made by the plaintiff herein under the provisions of section 313 (a) of the Tariff Act of 1930,[1] which claim was disallowed by the collector on the ground of failure of proof that the beta napthhol exported had actually

---

[1] SEC. 313. DRAWBACK AND REFUNDS.

(a) ARTICLES MADE FROM IMPORTED MERCHANDISE.—Upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties * * *.

been manufactured or produced with the use of the imported naphthalene. The present protest against such action was thereupon filed.

There seems to be some confusion in the minds of counsel for both parties as to the exact issue before this court. Prior to the importation of the naphthalene involved, the plaintiff had made application to the Bureau of Customs for the establishment of a so-called "rate of drawback" under the provisions of section 22.3 of the Customs Regulations of 1943. The application was denied by the Bureau of Customs, according to the record herein, for the reason that its investigation had shown that, in view of the continuous production process used, it would be impossible to identify the exported beta naphthol as having been manufactured with the use of the imported naphthalene.

Some portion of the record and a portion of the briefs filed on behalf of the parties are devoted to discussion of the reasons for and the action by the Bureau of Customs in denying the said application for a "rate of drawback," as well as its effect, and it is suggested by counsel for the Government in the brief filed in its behalf that the granting of such an application "would seem to be a condition prerequisite to obtaining drawback on the exportation." Neither application for nor the establishment of a "rate of drawback" is a condition precedent to obtaining drawback (*Adolphe Schwob (Inc.)* v. *United States*, 62 Treas. Dec. 248, T. D. 45908, affirmed in *United States* v. *Adolphe Schwob, Inc.*, 21 C. C. P. A. 116, T. D. 46447), so that the action of the Bureau of Customs in denying the application of the plaintiff in this case had no effect upon the plaintiff's right to bring and prosecute this action before this court.

In this court, it was incumbent upon the plaintiff, under its claim that drawback should have been allowed under the provisions of section 313 (a), *supra*, to establish the facts of importation, manufacture, and exportation which would satisfy the requirements of the statute, and also to establish that those customs regulations which are both applicable and mandatory in character (generally speaking, those prescribed under the authority contained in section 313 (i) of the Tariff Act of 1930) were complied with.

The facts of the importation of the naphthalene and the exportation of beta naphthol are not in dispute, nor does it seem to be contended on the part of the defendant that any of the customs regulations, other than those requiring identification of the exported article with the imported merchandise, were not complied with. The issue, therefore, is, has the plaintiff established that the exported beta naphthol was manufactured with the use of the imported naphthalene?

Any fair appraisal of the facts as developed in the record in this regard must result in the conclusion that the plaintiff has not established the required facts. There is absolutely nothing to show that the exported beta naphthol was manufactured or produced in any part with the use of the particular imported naphthalene, drawback of the duties paid on which is here claimed. The imported naphthalene formed a comparatively small part of the total amount of naphthalene used by the processing plant during the month of April 1947, something less than 10 per centum, in fact. The exported beta naphthol formed an even smaller percentage of the total production of the beta naphthol during the same month. There is no way, based upon the evidence offered herein, that any conclusion could be reached as to how much, if any, of the imported naphthalene was used in the manufacture or production of the exported beta naphthol, and under these circumstances judgment must be rendered in favor of the defendant.

In certain cases, upon exportation of articles manufactured or produced in the United States, drawback of 99 per centum of the duties paid on the importation of duty-paid merchandise is permitted even though the said imported merchandise was not actually used in the manufacture or production of the exported article, and domestic merchandise was substituted therefor. These cases are covered only by section 313 (b) of the Tariff Act of 1930, and are limited to imported duty-paid sugar or nonferrous metal, or ore containing nonferrous metal. To sustain the protest claim in this case upon the evidence now before us, would be, in effect, to extend the provisions of that section beyond the plain language of the statute.

On the record before us, we have no other course than to overrule the protest claim, and judgment will issue accordingly.