(C. D. 1818)

A. N. DERINGER, INC. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided November 8, 1956)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*William J. Vitale*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: On November 27, 1952, there was imported into the United States by the plaintiff, a customhouse broker, for the account of a Canadian manufacturer of steam traps, a shipment consisting of what is described on the invoice as "Seven Cutaway Models of Velan Steam Traps" made up in a special exhibition display, which included wooden display boards, and air compressor and container, a water pump, and a light fixture. The merchandise had been shipped to the United States for use as an exhibit in the National Power Show held in New York City on December 2, 1952, for the purpose of soliciting orders for steam traps.

The plaintiff secured the immediate release of the merchandise and was required, under the provisions of section 484 (a) of the Tariff Act of 1930, to make entry therefor within 48 hours. A representative of the plaintiff requested permission of the collector of customs to be allowed to make entry under 6 months' bond and without the payment of duty under the provisions of section 308 (3) of the Tariff Act of 1930, which, at that time, read, so far as pertinent, as follows:

SEC. 308. TEMPORARY FREE IMPORTATION UNDER BOND FOR EXPORTATION.

The following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation * * * :

* * * * * * *

(3) Samples solely for use in taking orders for merchandise * * * .

The request was an oral one, and apparently no entry or bond was tendered at any time. The collector informed the representative of the plaintiff that it would be necessary for him to enter the merchandise for consumption and pay duty thereon, which was, in effect, a refusal to permit entry under bond under section 308.

A consumption entry was subsequently filed on December 1, 1952, and the estimated duties paid. That entry was liquidated on June

30, 1953, and, within the statutory time thereafter, the present protest was filed, claiming that the merchandise should have been permitted entry under 6 months' bond, without payment of duty under section 308 (3), *supra*.

When the case was called for trial, counsel for the defendant moved that the protest be dismissed on the ground that, although it purports to be directed against the liquidation of the consumption entry, it is actually against the collector's refusal to permit entry under section 308 (3), *supra*, and was not filed within 60 days of that refusal. An alternative ground for dismissal is stated to be that the protest is not against any action involved in the liquidation.

Decision on the motion to dismiss was reserved, and evidence was taken on the merits. Counsel for the parties submitted briefs relating to both the motion to dismiss and the merits of the case.

It is clear from the brief filed by counsel for the defendant in support of the motion that it is the view of defendant that, under the circumstances of this case, the only right the plaintiff may have had by protest was against the collector's refusal to permit entry under section 308 (3) and that such right arose under the provision in section 514 of the act, permitting the filing of protests against the collector's—

* * * decisions excluding any merchandise from entry * * * under any provision of the customs laws * * *.

Such a protest, it is claimed, must be filed within 60 days of the decision excluding the merchandise from entry, or, in this case, within 60 days after November 28, 1952.

The rejection of an entry, with or without acceptance of another type of entry, is indubitably a decision "excluding [the] merchandise from entry." It was so considered in the case of *Central Commodities Corp.* v. *United States*, 6 Cust. Ct. 452, C. D. 514.

In that case, the collector rejected and refused to accept an entry of certain merchandise for the reason that countervailing duties, which the collector estimated to be payable, were not tendered with the entry. During the course of its opinion, the court noted that the protest was filed within the statutory time after the refusal of the collector to accept the entry.

It, therefore, appears that, under such circumstances, the importer whose entry is rejected has a cause of action by protest arising out of the refusal to accept the entry and that the statute of limitations in such case begins to run from the date of the rejection or refusal of the entry. We do not think, however, that that was the sole cause of action which, under the circumstances of this case, was available to the plaintiff. We are of the opinion that when the collector decided that the importation was subject to the payment of duties *and*

*liquidated the entry as dutiable* the plaintiff had a cause or causes of action against such decision and assessment. That cause or those causes was perfected by its protest against the collector's decision and/or liquidation and is authorized by those portions of section 514, which permit the filing of a protest against—

* * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and *amount of duties chargeable* * * * *and his liquidation* * * * *of any entry* * * *. [Italics added.]

It is the plaintiff's contention here that duties were not properly chargeable on the importation, i. e., that it should have been permitted entry without the payment of duties, and, consequently, the protest against the collector's decision and/or liquidation charging duties on the importation was proper, valid, and timely. See *The McCall Co.* v. *United States*, 66 Treas. Dec. 136, T. D. 47201 (as to the 6 of the 9 entries there involved, wherein the collector had refused to accept entries under section 308 and required consumption entries to be made), and *F. W. Myers & Co., Inc.* v. *United States*, 26 Cust. Ct. 44, C. D. 1296, relating to similar situations.

The motion to dismiss is, therefore, denied, and we proceed to a disposition of the case on the merits.

The issue, as framed by the parties, turns on the question of whether or not the imported display may be considered to be "samples" within the meaning of that term, as used in section 308 (3).

Webster's (New International Dictionary, 2d ed., 1945) defines a sample as—

A part of anything presented for inspection, or shown as evidence of the quality of the whole; a specimen; as, a *sample* of dress goods, of blood for analysis, or of one's workmanship.

The importation may be considered to have been in two parts. The first part consisted of seven actual samples of the steam traps, which were the product the shipper was seeking to sell. According to the evidence, the samples were "cutaway" samples, meaning that a portion of the exterior of each sample had been cut away so as to demonstrate the interior mechanism of the steam trap. The rest of the importation consisted of apparatus designed to be connected to the steam traps to demonstrate how the steam traps operated, and mountings and fixtures for the purpose of holding the samples and apparatus and illuminating the same.

We think there certainly can be no question but that the seven cutaway steam traps were "samples" within the meaning of that term, as used in the statute. They were actual steam traps such as were offered to be sold, save that the exteriors were cut away in part.

As we read the dictionary definition quoted above and from common knowledge on the matter, a sample is not always in the exact condition

in which the article offered is ultimately sold—it is a specimen, to be sure, but it is one such as intended to show the quality of the whole and may be so presented as to exhibit or emphasize some particular feature of the whole. The mere fact that a portion of the exterior of the steam traps here involved had been cut away so as to make the internal mechanism visible would not make them any the less samples, particularly since the intended viewing audience, i. e., people interested in purchasing steam traps, would presumably wish to inspect the more important, to them, features located in the interior of the articles.

We think that the apparatus and mountings imported with the cutaway samples are within the intended orbit of the provision. We may take judicial notice of the fact that samples of products offered for sale are frequently made up in such a way as to make the best purchaser appeal. Illustrations which come to mind are swatch books, which frequently are nicely bound and contain advertising and descriptive material. Also, wallpaper sample books, and free advertising samples, which are often given away to introduce a product or assist in its sale.

Consequently, it would appear to be within common practice, depending upon the type of article being offered, to "dress up," so to speak, or to surround the sample with an attractive setting to give the sample its best presentation. There is testimony that the apparatus and mountings here involved were necessary for the proper display and sale by sample of steam traps, and we are of the opinion that they may be considered to be such reasonable adjuncts of the samples proper that they are within the intended purview of the provision.

Counsel for the defendant has cited a number of cases involving instances where the imported merchandise was not a specimen or sample of the merchandise intended to be sold but was either advertising material or a representation of the results which could be obtained with the use of the merchandise intended to be sold, without, in either case, a sample of the merchandise itself. We do not think any of those cases have application to the situation in this case, where actual samples of the merchandise intended to be sold are the core of the importation.

The evidence shows that the merchandise was exported immediately after importation, and, consequently, prior to 6 months after importation. Therefore, following the principles expressed in *F. W. Myers & Co., Inc.* v. *United States*, 26 Cust. Ct. 44, C. D. 1296, citing *United States* v. *Hannevig*, 10 Ct. Cust. Appls. 124, T. D. 38384, no question arises as to compliance with the statute under which claim is made, section 308 (3), *supra*, or the customs regulations in relation thereto.

Judgment will, therefore, issue sustaining the protest claim and directing reliquidation of the entry accordingly.