(C.D. 2131)

BORDER BROKERAGE CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 29, 1959)

*Lawrence & Tuttle* (*Barnes, Richardson & Colburn* by *Edward N. Glad* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Murray Sklaroff* and *Margaret M. Vallerie,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: Plaintiff, a customhouse broker, prepared and submitted to the collector of customs at the subport of Blaine, Wash., temporary import bond entries covering three shipments of empty paper fertilizer bags. Its action was taken in apparent compliance with the provisions of section 308(1) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, wherein the following is prescribed:

Sec. 308.  Temporary Free Importation Under Bond For Exportation.

The following articles, when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation, which period may, in the discretion of the Secretary of the Treasury (whether such articles are imported before or after this section becomes effective), be extended, upon application, for a further period not to exceed six months:

(1) Articles to be repaired, altered, or otherwise changed in condition by processes which do not result in articles manufactured or produced in the United States;

Upon the refusal of the collector to accept the temporary entries under bond, regular consumption entries were filed, and eventually were liquidated as dutiable at the rate of 17½ per centum ad valorem, pursuant to the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, for manufactures of paper, not specially provided for.

The collector's assessment of duty upon each of said inportations was duly protested, and the respective protests were consolidated for purposes of trial. It is therein claimed that the involved fertilizer bags should have been accorded temporary free entry as provided by said section 308(1), as amended. An alternative claim that drawback should have been allowed upon exportation, by virtue of section 313 of said tariff act, has been abandoned.

The record establishes that the subject fertilizer bags were the property of the Green Valley Fertilizer & Chemical Co., Ltd., of Canada. Owing to a fire in 1956, which destroyed its manufacturing facilities, the company made temporary arrangements for shipping the empty bags to the United States to be here filled with fertilizer, and returned to Canada. It further appears that the bags were of two

kinds. Those described as open mouth, and represented by plaintiff's exhibit 3, were, after filling to the desired weight, folded across the top and run through a sewing machine which stitched and sealed them. The so-called valve type, represented by plaintiff's exhibit 4, has a valve in a folded corner of the bottom, through which the bag is filled by a machine which blows the fertilizer into the bag, and automatically seals the valve.

Prior to exportation of the filled bags, a request was made of the customs personnel at Blaine for supervision of the exportation, as required by applicable regulations (section 1031, Customs Regulations of 1943, as amended). This request was denied for the reason that temporary import bond entries had not been accepted.

From copies of telegrams which are in evidence, as plaintiff's exhibits 1 and 2, it has been shown that plaintiff addressed a request for temporary free entry under bond to the Commissioner of Customs, at Washington, D.C., who denied the same, for the reason that the process of filling the bags with domestic fertilizer was not regarded as "a process or operation permissible under temporary bond entry section 308."

Counsel for the respective parties hereto have stipulated that the bags in issue are in chief value of paper and "that these articles which were imported empty and then filled with fertilizer and then exported filled did not result in articles manufactured or produced in the United States."

In view of the established facts, and the provisions of section 308(1), as amended, *supra*, it is clear that the question to be determined in this case is whether these bags were, at the time of importation, "articles to be repaired, altered, or otherwise changed in condition by processes which do not result in articles manufactured or produced in the United States."

Under authority of the case of *C. S. Emery & Co.* v. *United States*, 71 Treas. Dec. 880, T.D. 49000, plaintiff urges that the provisions of section 308 ought to be liberally construed in furtherance of its purpose to benefit American labor and capital, and that such liberal construction dictates a holding that the filling and sealing of the involved bags constitutes a change in condition, within the contemplation of said section.

It is the contention of counsel for the Government that the phrase "otherwise changed in condition by processes," etc., inserted into the basic act by the 1938 amendment, was intended to embrace those imported articles changed in condition by some process other than repair or alteration, but not so far advanced as to be entitled to drawback as an article manufactured or produced in the United States from imported materials. More specifically, it is urged that the area between articles repaired or altered, on the one hand, and articles manufactured or produced, on the other, should be occupied by, and

confined to, instances of an application of labor and processing to the article imported. The suggestion is made that there must have been some intention to perform work on the bags themselves, as, for example, painting, waterproofing, or other finishing process, rather than a mere purpose to use the bags as receptacles for a domestic product.

This is a refinement which we believe to be beyond the contemplation of the statute in question, in its amended form, especially when considered in the light of the established fact that the instant bags were, in addition to being filled, changed in condition by sealing. Putting aside, for the moment, the effect of the filling process, there can be little doubt that folding and stitching the open end bags, such as are represented by plaintiff's exhibit 3, and automatically sealing the valve type bags of the kind illustrated by plaintiff's exhibit 4, are processes applied to the bags themselves, which change their condition from open to sealed containers.

The case of *C. S. Emery & Co.* v. *United States, supra,* decided prior to the passage of the Customs Administrative Act of 1938, and, hence, prior to the time the phrase "otherwise changed in condition by processes," etc., was added to the section, involved certain chuck bushings imported for the purpose of being chromium plated. In holding that the collector should have permitted temporary free entry under bond, as articles imported for repair or alteration, this court stated:

> The collector gave as his reason for such rejection that, in his opinion, the chromium plating on said chuck bushings was not an alteration within the meaning of said section 308, but rather a manufacturing operation which was a necessary step in the completion of the bushings. We are of the opinion that such action on the part of the collector was erroneous. There is nothing in the law which would indicate that the word "altered" contemplates confining its scope to any particular kind of change made in an article or to any definite purpose for which such change may be made. The term, as we view it, is designed to cover changes which are not in the nature of repairs. Necessarily the words "to be altered" would cover changes which are not in the nature of repairs. It would seem that the Congress out of an abundance of caution used both terms to insure any possible change made in an article.

> Webster's New International Dictionary thus defines the word "alter":

> 1. To make otherwise; to change in one or more respects, but without destruction of the identity of the thing changed; to make (a thing) different without changing it into something else; to vary; to modify; sometimes, to change in any way.

> \*      \*      \*      \*      \*      \*      \*

> What constitutes a repair, particularly as used in paragraph 1615 according free entry to returned American goods, has been decided by the courts, but precisely what constitutes an alteration as distinguished from a repair, so far as we know, has not been adjudicated. While the cases cited by the plaintiffs in their brief hold that the courts have frequently held arbitrary regulations promulgated by the Treasury Department interfering with the right to free entry of merchandise under various sections of the tariff act as null and void, we have not been able to find a case where the collector of customs took it upon

himself to interpret the meaning of a well-known word in the statute and to refuse to accept a special bond entry made in compliance with a section of the tariff act, as in the present case. If the word "alter" means to "change," and the dictionaries so define it, we know of no authority, statutory or otherwise, which empowers the collector to restrict or limit the nature or purpose of the change. If the word "alter" does not mean to change, then why was it used? Furthermore, it is manifestly for the benefit of American enterprise and American labor to promote the free importation under bond of merchandise for the sole purpose of having American labor and capital expended thereon, thus carrying out one of the express purposes of the Tariff Act of 1930, to wit, to encourage the industries of the United States.

Hence, even without the more extensive language of section 308(1) as it presently reads, this court expressed the view that it was not the province of the collector to explore the nature or purpose of the change to be effected upon an imported article in determining whether a temporary free entry under bond is authorized. If an article is imported with an intent to subject it to a change in condition, and a change actually occurs, the statute is satisfied, notwithstanding the fact that the change is a mere incident to another primary object, as here, the obtaining of domestic fertilizer.

Under the circumstances obtaining in this case, the question of whether the mere filling of an empty container would constitute a change in condition within the meaning and intent of said section 308(1) need not at this time be determined. It is to be noted, however, that, in the case of *Knight* v. *Schell*, 65 U.S. 526, the Supreme Court of the United States held that where empty barrels of American manufacture were exported to Cuba, and there filled with molasses, they were not, when brought back to the United States, in the same condition as when exported. It is to state the obvious to conclude that if the filled barrels were not in the same condition as the empty barrels, some change in condition must have occurred.

Since the failure to comply with the provisions of section 308(1), *supra*, and regulations appertaining thereto, was occasioned, not by any omission or dereliction on the part of the plaintiff, but rather by the collector's refusal to accept the proffered entries and to inspect the exportations, the plaintiff's right to protest the instant liquidations may not be denied. See *C. S. Emery & Co.* v. *United States*, *supra*, and *A. N. Deringer, Inc.* v. *United States*, 37 Cust. Ct. 166, C.D. 1818, in which latter case the following is stated:

It, therefore, appears that, under such circumstances, the importer whose entry is rejected has a cause of action by protest arising out of the refusal to accept the entry and that the statute of limitations in such case begins to run from the date of the rejection or refusal of the entry. We do not think, however, that that was the sole cause of action which, under the circumstances of this case, was available to the plaintiff. We are of the opinion that when the collector decided that the importation was subject to the payment of duties *and liquidated the entry as dutiable* the plaintiff had a cause or causes of action against such decision and assessment. That cause or those causes was per-

fected by its protest against the collector's decision and/or liquidation and is authorized by those portions of section 514, which permit the filing of a protest against—

> * * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and *amount of duties chargeable* * * * *and his liquidation* * * * *of any entry* * * * . [Italics added.]

It is the plaintiff's contention here that duties were not properly chargeable on the importation, i.e., that it should have been permitted entry without the payment of duties, and, consequently, the protest against the collector's decision and/or liquidation charging duties on the importation was proper, valid, and timely. See *The McCall Co.* v. *United States*, 66 Treas. Dec. 136, T.D. 47201 (as to the 6 of the 9 entries there involved, wherein the collector had refused to accept entries under section 308 and required consumption entries to be made), and *F. W. Myers & Co., Inc.* v. *United States*, 26 Cust. Ct. 44, C.D. 1296, relating to similar situations. [All italics quoted.]

Based upon the foregoing considerations, we find and hold that the involved paper fertilizer bags should have been accepted for temporary free entry under bond as provided for in section 308(1), as amended, *supra*. The assessment of duty upon this merchandise at the rate of 17½ per centum ad valorem, within the provisions of paragraph 1413 of the Tariff Act of 1930, as modified, *supra*, for manufactures of paper, not specially provided for, was, therefore, improper. The claim in the protests to that effect is sustained. All other claims having been abandoned are hereby dismissed.

Judgment will be entered accordingly.