For the reasons hereinbefore stated, the protest is overruled. Judgment will be entered accordingly.

(C.D. 2406)

CARL MATUSEK SHIPPING CO., INC.
DISTRIBUTORS ASSOCIATES, INC. } v. UNITED STATES

United States Customs Court, First Division

(Decided July 1, 1963)

*Harold J. Cohen* for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: This protest is directed against the refusal of the collector to allow as drawback, under section 313, Tariff Act of 1930, as amended, 99 per centum of the duties which had been paid upon the importation of certain kerosene heaters and parts. Drawback was denied on the ground of alleged noncompliance with the provisions of sections 22.31–22.33 of the Customs Regulations, as amended.

The pertinent regulations herein involved are as follows:

Section 313 of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, T.D. 53318, 88 Treas. Dec. 186, 194:

(c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICATIONS.—Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

Customs Regulations, as amended:

### REJECTED MERCHANDISE

22.31 Drawback allowance.—Upon the exportation of imported merchandise not conforming to sample or specifications or shipped without the consent of the consignee, the duties paid thereon, less 1 percent, shall be refunded as drawback in accordance with the provisions of section 313(c), Tariff Act of 1930, as amended, subject to compliance with the regulations in sections 22.32 to 22.35, inclusive.

22.32 Drawback entry.—(a) An importer of merchandise claimed not to conform to sample or specifications or to have been shipped to him without his consent, who desires to export such merchandise with benefit of drawback, shall file with the collector of customs at the port where the merchandise was entered a drawback entry in duplicate on customs Form 7539, stating the quantity and description of the merchandise and identifying it with the import entry. * * *

(b) * * * If the goods are claimed to be not in accordance with sample or specifications, the drawback entry shall be accompanied by a copy of the order for the merchandise, copies of any preliminary correspondence, and the samples or specifications on which the merchandise was ordered, together with a certificate of the actual owner that the sample or specifications submitted are those on which the merchandise was ordered, showing in detail in what manner the merchandise does not conform to sample or specifications. * * *

22.33 Return of merchandise to customs custody.—(a) Upon receipt of the drawback entry, the collector shall assign a number thereto, by appropriate notation on all copies, approve the place of deposit of the merchandise specified by the person making the entry or designate another place if that one is not deemed suitable, and return the original to the entrant for presentation with the merchandise to the customs officer at the place of deposit. The merchandise shall be delivered into customs custody at such place within 90 days after the date on which it was originally released from customs custody unless, either before or after the return of the merchandise, a longer time is specially authorized by the Bureau, or by the collector under the authority of this paragraph. * * *

The record in this case, as appears from the testimony of Mr. Irving Witz, president of Distributors Associates, Inc., the actual consignee of the merchandise under consideration, discloses the following set of facts: Plaintiffs' witness, while in Hong Kong, contracted for the purchase of 500 kerosene heaters and spare parts, which were subsequently shipped to and received at the port of Tampa, Fla. Some 200 heaters were later sold by the plaintiff corporation to various

customers in the United States. When the buyers attempted to use the heaters, the latter did not operate satisfactorily, it appearing that the kerosene leaked out of the containers, causing constant unpleasant odors, and, furthermore, the stoves would not maintain a satisfactory heat level for a sufficient period of time. Consequently, complaints were lodged with the seller by practically all the purchasers of the merchandise. Subsequently, most of the heaters so sold were returned by the purchasers to the seller as being unsatisfactory. The plaintiff corporation thereupon refunded the purchase price to the customers to whom the heaters had been sold. Efforts to repair the heaters so as to make them operate efficiently were unsuccessful. Thereafter, 407 heaters and spare parts were returned to the exporter in Hong Kong who reimbursed the importer for its outlay for the purchase of the heaters that were so returned. Evidently, the balance of the stoves not returned were retained by the customers who had purchased them in the United States.

The record herein further discloses that more than a year had elapsed from the time of importation of the heaters and parts and their release into the commerce of the United States until they were returned to the exporter in Hong Kong.

It is conceded that the plaintiffs did not comply with the provisions of the Tariff Act of 1930 (section 313(c)) governing claims for refunds as drawback, nor with the provisions of the Customs Regulations governing drawback allowances for rejected merchandise (Customs Regulations, sections 22.31–22.33). When the merchandise was exported from Florida to Hong Kong, the official papers show that the reason given was that the stoves were returned for repair. The plaintiffs claim the merchandise did not conform to sample or specifications.

As stated in the brief for the Government, the issue in this case is whether "an importer who has returned merchandise to the foreign seller is entitled to a refund of duties when there has been a non-compliance with the requirements of the drawback statute (section 313(c)) and the appropriate Customs Regulations (sec. 22.31–22.33)."

The plaintiffs claim relief for the reason that "in equity and in good conscience the government of the United States should not further increase the loss to an importer and taxpayer, by arbitrarily denying to him the opportunity to a refund," arguing that it was not the intent of Congress to deny drawback relief in circumstances such as prevail in the instant case, particularly since the importer sustained a loss of freight paid for both importing and exporting the merchandise, the cost of advertising the merchandise for sale, and the loss of good will through distributing, unknowingly, inferior merchandise.

In this case, it is clear that the plaintiffs would not be entitled to the relief sought even though the United States Customs Court might be vested with equitable jurisdiction. In any event, it is well-established law that the United States Customs Court has no equitable jurisdiction. (See *Henry Wedemeyer* v. *United States*, 25 Cust. Ct. 360, Reap. Dec. 7854, affirmed in *Id.* v. *Id.*, 27 Cust. Ct. 449, Reap. Dec. 8051; *Bullocks, Inc.* v. *United States*, 7 Cust. Ct. 12, C.D. 522; *Gilbert W. Greene* v. *United States*, 13 Cust. Ct. 273, Abstract 49676.)

In the *Bullocks, Inc.*, case, *supra*, where the facts might well have warranted relief had the court possessed equitable jurisdiction, it was stated "It is indeed unfortunate that the examiner neglected to mark all of the items which he may have intended to mark. But this court possesses no equity jurisdiction giving it authority to remedy such an omission on the part of a customs official."

In the *Gilbert W. Greene* case, *supra*, it apparently was conceded that a certain ring, included in the personal effects of an American citizen who visited Mexico, and which had been altered there, would have been admitted duty free had the proper claim been made at the right time. It appears that the plaintiff therein limited his claim that the ring was properly free of duty, as American goods returned, to paragraph 1615 of the Tariff Act of 1930, under the provision covering articles, exported for repairs or alterations. However, certain customs regulations as to the identity of the article had not been complied with. In rejecting the plaintiff's claim, the court, in the *Gilbert W. Greene* case, *supra*, stated, page 275:

* * * The alterations made to the ring in question, according to the law under which it was entered, are not of such nature as to preclude its identity under the provisions of paragraph 1615. However, the regulations of the Secretary of the Treasury as to exportation for repairs have not been complied with. These regulations have been held to be a condition precedent to the free entry of repaired articles upon return of the same to the United States. The ring in question was taken by the plaintiff into Mexico as a part of his baggage. It not only was not registered as an article to be exported for repairs, but the plaintiff at the time he entered Mexico did not contemplate having any repairs or alterations made in connection therewith. The claim under paragraph 1615 therefore can not be sustained because of the noncompliance of regulations.

* * * Upon the return of the ring to the United States, it was entered as free under paragraph 1798, *supra*, and, under the foregoing decisions, the collector erroneously refused to identify the ring as it had not been changed in such manner as to become a new entity. The major portion of the article taken abroad was returned and was identifiable. We are, however, unable to return a judgment in favor of the plaintiff. Unfortunately, the plaintiff has failed to specify that the ring was entitled to free entry under paragraph 1798, and has specifically limited his claim to paragraph 1615. Although the law provides that a protest may be amended before trial to include other claims, the plaintiff also failed to avail himself of the privilege of amendment, thus electing to stand or fall upon his claim that the ring was free as American goods returned, under the provision covering articles exported for repairs or alterations. This court

is without equitable jurisdiction, and inasmuch as the protest before us fails to claim that the ring was entitled to free entry under paragraph 1798, *supra*, we are constrained to sustain the action of the collector although not approving of the same. See *United States* v. *Furuya*, 11 Ct. Cust. Appls. 551, T.D. 39699.

The opinion of the court, in the *Gilbert W. Greene* case, *supra*, puts clearly in focus the fact that the United States Customs Court is without equitable jurisdiction. Since the plaintiffs admittedly did not file customs Form 7539 or any other form or document by way of an application for drawback within the required time, or at all, and did not comply with the Customs Regulations, there is no legal basis upon which the court can find for the plaintiffs and grant the relief sought.

The plaintiffs contend that they were improperly denied an extension of time in which to make a claim for drawback. This claim is clearly without merit. The courts have held that compliance with the provisions of the statute and of the Customs Regulations is essential before refunds can be allowed as drawback. (See *J. Einstein, Inc.* v. *United States*, 34 Cust. Ct. 31, C.D. 1673; *Export Petroleum of Calif., Ltd.* v. *United States*, 64 Treas. Dec. 313, T.D. 46659; *Ciba Company, Inc.* v. *United States*, 27 Cust. Ct. 144, C.D. 1359.)

In the *Export Petroleum* case, *supra*, the court held, page 315:

* * * However, we are inclined to the belief that the language of the statute clearly contemplates that when imported merchandise is returned to customs custody within the time named for exportation with benefit of drawback for the reason that it does not conform to sample or to the specifications accompanying the order therefor, it shall remain continuously in customs custody until it is laden on board of the exporting carrier under customs supervision, and that for that reason alone the collector was justified in refusing to allow drawback.

The *Export Petroleum* case, *supra*, is further applicable to the present situation, since, in the case now under consideration, the record is devoid of any evidence indicating that specific specifications (page 316)—

* * * written or oral, accompanied the order placed with the foreign seller for these drums, and the further fact that, even if it were assumed that the order for the drums was accompanied by specifications, there is nothing before the court to indicate in what detail, if any, the drums failed to comply with the specifications.

As pointed out in defendant's brief, the provisions for drawback under the tariff act confer a privilege and are not in the nature of a basic right, and the Supreme Court of the United States has so held. In *Swan and Finch Company* v. *United States*, 190 U.S. 143, 146, the Court stated:

* * * Being a governmental grant of a privilege or benefit it is to be construed in favor of the government and against the party claiming the grant. * * * where a privilege is granted any doubt is resolved in favor of the government.

This same construction of the privilege of drawback is set forth in the case of *Hannibal et al.* v. *Missouri River Packet Company*, 125 U.S. 260, 271, in which the following statement of law occurs:

But if there be any doubt as to the proper construction of this statute, (and we think there is none,) then that construction must be adopted which is most advantageous to the interests of the government. The statute being a grant of a privilege, must be construed most strongly in favor of the grantor. *Gildart* v. *Gladstone*, 12 East, 668, 675; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 544; *Dubuque and Pacific Railroad* v. *Litchfield*, 23 How. 66; *The Binghampton Bridge*, 3 Wall. 51, 75; *Rice* v. *Railroad Co.*, 1 Black, 358, 380; *Leavenworth, Lawrence and Galveston Railroad* v. *United States*, 92 U.S. 733; *Fertilizing Co.* v. *Hyde Park*, 97 U.S. 659.

Of course, the same construction of the principle of law in drawback as that set forth by the United States Supreme Court has been followed by the United States Customs Court. (See *Romar Trading Co., Inc.* v. *United States*, 27 Cust. Ct. 34, 37, C.D. 1344.)

For the reasons hereinbefore given, the court finds that the plaintiffs have failed to present a case warranting relief. The protest is, therefore, overruled and judgment will be entered accordingly.