(C.D. 2465)

BORDER BROKERAGE COMPANY
A. G. GRASHER } *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 22, 1964)

*Lawrence & Tuttle* (*Edward N. Glad* of counsel) for the plaintiffs.
*John W. Douglas*, Assistant Attorney General (*James F. O'Hara* and *Herbert L. Warren*, trial attorneys, for the defendant.

Before OLIVER and WILSON, Judges

WILSON, Judge: In this case, the protest is directed against the refusal of the collector to refund as drawback duties paid on certain

tools and dies, exported from Canada in March 1959 and subsequently reexported to the country of origin on August 1, 1959. After the case had been tried and submitted, defendant challenged the jurisdiction of the court on the ground that the protest was untimely and, therefore, barred under the provisions of section 514 of the Tariff Act of 1930.

Of course, if the protest was not filed within the time specified under the provisions of section 514, *supra*, then the court has no jurisdiction in the matter and should not proceed with the decision of the case on its merits.

It was stipulated by the parties, "that the drawback entry for this particular shipment, when it was re-exported, was filed with customs custody on July 6, 1959, and that the merchandise was given over to the custody of the customs on July 6, 1959; that a request for the extension of a further period within which to export under drawback was made on July 1, 1959; that the merchandise was in fact exported on August 1, 1959; and that the request for the extension, as well as the drawback claims, were both denied as of May 2, 1960" (R.3).

This protest was not filed until the 14th day of November, 1960, more than 60 days after the rejection of the plaintiffs' application for drawback but within 60 days after the final liquidation of the entries by the collector. It is clear, therefore, that if the only right of action available to the plaintiffs was a protest against the rejection of their application for drawback, then their right of action is barred under the provisions of section 514, *supra*. However, if there was also open to the plaintiffs the right to protest the collector's final liquidation, then the protest was timely, and the court has jurisdiction to proceed with a decision of the case upon its merits.

In the case of *A. N. Deringer, Inc.* v. *United States*, 37 Cust. Ct. 166, C.D. 1818, which involved the exportation from Canada of certain steam traps for use in an exhibit and which the collector demanded be entered as merchandise for consumption and duty be paid thereon, a consumption entry was filed December 1, 1952, and the estimated duty paid. . The entry was liquidated on June 30, 1953, and, within 60 days after the latter date, a protest was filed, claiming that the merchandise should have been permitted entry under 6 months' bond, without payment of duty under section 308(3) of the Tariff Act of 1930, which provided that certain articles—

* * * when not imported for sale or for sale on approval, may be admitted into the United States under such rules and regulations as the Secretary of the Treasury may prescribe, without the payment of duty, under bond for their exportation within six months from the date of importation * * *:

\*    \*    \*    \*    \*    \*    \*

(3) Samples solely for use in taking orders for merchandise * * *.

In that case, the Government, when the case was brought to trial, moved (page 168) that the protest be dismissed upon the ground that—

* * * although it purports to be directed against the liquidation of the consumption entry, it is actually against the collector's refusal to permit entry under section 308(3), *supra*, and was not filed within 60 days of that refusal. * * *

The court, commenting upon the Government motion, at page 168, said:

It is clear from the brief filed by counsel for the defendant in support of the motion that it is the view of defendant that, under the circumstances of this case, the only right the plaintiff may have had by protest was against the collector's refusal to permit entry under section 308(3) and that such right arose under the provision in section 514 of the act, permitting the filing of protests against the collector's—

* * * decisions excluding any merchandise from entry * * * under any provision of the customs laws * * *.

Such a protest, it is claimed, must be filed within 60 days of the decision excluding the merchandise from entry, or, in this case, within 60 days after November 28, 1952.

The rejection of an entry, with or without acceptance of another type of entry, is indubitably a decision "excluding [the] merchandise from entry." It was so considered in the case of *Central Commodities Corp.* v. *United States*, 6 Cust. Ct. 452, C.D. 514.

The court, in the *Deringer* case, *supra*, then proceeded to state that it appeared that the plaintiff did have a right of action by way of protest of which it might have availed itself when the collector refused to accept the entry and that the statute of limitations began to run as of the date of such rejection or refusal of the entry. However, the court found that the plaintiff also had the right to protest against the collector's liquidation of the entry. "We do not think, however," said the court, "that that was the sole cause of action which, under the circumstances of this case, was available to the plaintiff," further stating (pages 168–169)—

* * * We are of the opinion that when the collector decided that the importation was subject to the payment of duties *and liquidated the entry as dutiable* the plaintiff had a cause or causes of action against such decision and assessment. That cause or those causes was perfected by its protest against the collector's decision and/or liquidation and is authorized by those portions of section 514, which permit the filing of a protest against—

* * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and *amount of duties chargeable* * * * *and his liquidation* * * * *of any entry* * * *. [Italics quoted.]

We are of the opinion that the law in the *A.N. Deringer* case, *supra*, is applicable in the case now before us and hold that although the plaintiffs could have filed a protest against the collector's rejection of their

application for drawback, yet they were not foreclosed under the provisions of section 514 of the Tariff Act of 1930 from protesting against the collector's final liquidation.

Proceeding now to the consideration of the case upon its merits, we are of the opinion that the plaintiffs have failed to establish a case which would justify the court in holding that the collector erred in rejecting the plaintiffs' claim for drawback.

The statute and regulations applicable to the case now under consideration are as follows:

Section 313(c) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, T.D. 53318, 88 Treas. Dec. 186, 194, insofar as pertinent to the decision of the case before us, reads:

(c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICATIONS.—Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such merchandise shall be refunded as drawback, less 1 per centum of such duties.

The following are the regulations involved:

REJECTED MERCHANDISE

22.31 Drawback allowance.—Upon the exportation of imported merchandise not conforming to sample or specifications or shipped without the consent of the consignee, the duties paid thereon, less 1 percent, shall be refunded as drawback in accordance with the provisions of section 313(c), Tariff Act of 1930, as amended, subject to compliance with the regulations in sections 22.32 to 22.35, inclusive.

22.32 Drawback entry.—(a) An importer of merchandise claimed not to conform to sample or specifications or to have been shipped to him without his consent, who desires to export such merchandise with benefit of drawback, shall file with the collector of customs at the port where the merchandise was entered or at any other port a drawback entry in duplicate on customs Form 7539, stating the quantity and description of the merchandise and identifying it with the import entry. * * *

(b) * * * If the goods are claimed to be not in accordance with sample or specifications, the drawback entry shall be accompanied by a copy of the order for the merchandise, copies of any preliminary correspondence, and the samples or specifications on which the merchandise was ordered, together with a certificate of the actual owner that the sample or specifications submitted are those on which the merchandise was ordered, showing in detail in what manner the merchandise does not conform to sample or specifications. * * *

22.33 Return of merchandise to customs custody.—(a) Upon receipt of the drawback entry, the collector shall assign a number thereto, by appropriate notation on all copies, approve the place of deposit of the merchandise specified by the person making the entry or designate another place if that one is not deemed suitable, and return the original to the entrant for presentation with the merchandise to the customs officer at the place of deposit. The merchandise shall be delivered into customs custody at such place within 90 days after the date on

which it was originally released from customs custody unless, either before or after the return of the merchandise a longer time is specially authorized by the Bureau, or by the collector under the authority of this paragraph. * * *

In the decision of cases involving applications for drawback, it must be borne in mind that "The courts have held that compliance with the provisions of the statute and of the Customs Regulations is essential before refunds can be allowed as drawback." *Carl Matusek Shipping Co., Inc., and Distributors Associates, Inc.* v. *United States*, 51 Cust. Ct. 8, C.D. 2406, and cases therein cited.

It is also essential to bear in mind that drawback is a privilege and not a vested right and can ripen into a right only when the statute and the regulations have been strictly complied with. Such compliance is mandatory. *Spencer, Kellogg & Sons (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 612, T.D. 41459; *Geo. Wm. Rueff, Inc.* v. *United States*, 13 Cust. Ct. 229, C.D. 900; *Campbell* v. *United States*, 107 U.S. 407, 27 L. ed. 592, 2 S.C.R. 759. See also, *United States* v. *W. C. Hardesty Co., Inc.*, 36 CCPA 47, C.A.D. 396.

Any doubt arising in the decision of a drawback case in the construction of the statute and regulations must be decided in favor of the Government. *Nestle's Food Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 451, T.D. 43199.

In the case of *Ciba Company, Inc.* v. *United States*, 27 Cust. Ct. 144, C.D. 1359, at page 146, the court held:

In this court, it was incumbent upon the plaintiff, under its claim that drawback should have been allowed under the provisions of section 313(a), *supra*, to establish the facts of importation, manufacture, and exportation which would satisfy the requirements of the statute, and also to establish that those customs regulations which are both applicable and mandatory in character (generally speaking, those prescribed under the authority contained in section 313(i) of the Tariff Act of 1930) were complied with.

There is no conflict in the evidence in this case. The parties have stipulated that the merchandise in question was exported from Canada in March 1959 and that the shipment was not placed in customs custody for reexportation until July 6, 1959. On July 1, 1959, a request for an extension of time within which to export the goods was filed. This request was denied on May 2, 1960. No protest was filed herein until after the lapse of more than 60 days following May 2, 1960. Under the facts in this case, we are of the opinion that the collector did not abuse his discretion in rejecting the application for drawback. Neither was such denial arbitrary or unreasonable.

The facts further disclose that there is no competent evidence in this case sufficient to establish the plaintiffs' claim that the merchandise upon which drawback was claimed did not conform to specifications. In the first place, there is no testimony upon which it might be found that there were any specifications, and, furthermore, if there were such

specifications, in what particulars the imported merchandise failed to conform to such specifications. Surely, the term "specifications" means something more than mere speculation. The statements and affidavits among the entry papers are incompetent to prove plaintiffs' claim. This is a protest, not a reappraisement appeal. The testimony of the plaintiffs' witness, Peter R. Seeley, contains no facts adequate to establish any specifications. Furthermore, there was no competent testimony that the merchandise in question was ever examined by the witness Seeley, or anyone else who testified in court, to determine what its condition was at the time of its importation or its exportation back to Canada. Mr. Seeley's testimony was so tenuous that it was entitled to little weight. It was speculative and entitled to little consideration in determining the basic issues in this case.

From the record, we hold that the plaintiffs have not sustained their burden of proof. The protest is, therefore, overruled, and judgment will be entered accordingly.