*Funk and Wagnalls New Standard Dictionary of the English Language* (1960)

"curtain, n. 1. A draping or covering, hanging loosely, and readily adjustable, variously employed, as to prevent the passage of light through a window or other opening, to screen a stage * * * or to hide some object from view; * * *."

"drape, n. Drapery; draping."

"shade, n. * * * 5. Something that serves to intercept, protect from, or modify the effect of light; * * * specif.: (1) a screen of muslin, paper, or other material, used before a window, usually arranged to be raised and lowered, as distinguished from a window-curtain draped from the sides. * * *"

These definitions show clearly that the articles defined share a common purpose or function in concealing, screening and controlling light. It is the conclusion of the court that the words "like furnishings", in the pertinent provisions of the Tariff Schedules of the United States, are not limited to articles that are ornamented or ornamental. Additionally, since the controverted window shades are used as window coverings to provide privacy and light control, they are *ejusdem generis* with curtains and drapes, and are therefore "like furnishings" within item 772.35 of the Tariff Schedules of the United States.

In view of the foregoing, the court holds that the controverted merchandise was properly classified under item 772.35 of the Tariff Schedules of the United States and that the presumption of correctness that attaches to the collector's classification has not been overcome. Since the plaintiff has not borne its burden of proving that the imported merchandise was erroneously classified, and that the claimed classification is correct, the protest is overruled. Judgment will issue accordingly.

(C.D. 3984)

FRANK P. DOW CO., INC., OF L.A. PARADISE MANUFACTURING CO. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided March 31, 1970)

*Glad & Tuttle* (*Robert Glenn White* and *Edward N. Glad* of counsel) for the plaintiffs.

*William D. Ruckelshaus,* Assistant Attorney General (*Morris Braverman* and *Robert Blanc,* trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: These consolidated protests are directed against the action of the collector of customs in refusing to allow drawback under the provisions of section 313(c) of the Tariff Act of 1930, as amended, on the exportation of certain inflatable toys which plaintiffs claimed did not conform to the sample or specification.

The parties have stipulated that "the regulations applicable to drawback claims have been complied with to the extent of filing the documents, and returning the merchandise to Customs in the manner and time required by the regulations, and the goods were exported as required."

Miss Helen Murphy, who was the drawback liquidator for the Bureau of Customs at the time of these exportations, testified that the drawbacks "were not allowed because there was not identification with the original importation."

The issue, therefore, is whether the importer upon applying for drawback, complied with the customs regulations concerning the proper identification of the exported merchandise with the original entry.

The pertinent statutory materials read as follows:

Section 313, Tariff Act of 1930, as amended (19 U.S.C., section 1313) :

 (c) MERCHANDISE NOT CONFORMING TO SAMPLE OR SPECIFICA-TION.—Upon the exportation of merchandise not conforming to sample or specifications or shipped without the consent of the consignee upon which the duties have been paid and which have been entered or withdrawn for consumption and, within ninety days after release from customs custody, unless the Secretary authorizes in writing a longer time, returned to customs custody for exportation, the full amount of the duties paid upon such

merchandise shall be refunded as drawback less 1 per centum of such duties.

\* \* \* \* \* \* \*

(h) TIME LIMITATION ON EXPORTATION.—No drawback shall be allowed under the provisions of this section unless the completed article is exported within five years after importation of the imported merchandise.

(i) REGULATIONS.—Allowance of the privileges provided for in this section shall be subject to compliance with such rules and regulations as the Secretary of the Treasury shall prescribe, which may include, but need not be limited to, the fixing of a time limit within which drawback entries or entries for refund under any of the provisions of this section or section 1309(b) of this title shall be filed and completed, and the designation of the person to whom any refund or payment of drawback shall be made.

Customs Regulations:

[Section] 22.31 Drawback Allowance.—Upon the exportation of imported merchandise not conforming to sample or specifications or shipped without the consent of the consignee, the duties paid thereon, less 1 percent, shall be refunded as drawback in accordance with the provisions of section 313(c), Tariff Act of 1930, as amended, subject to compliance with the regulations in sections 22.32 to 22.35, inclusive.

[Section] 22.32 Drawback entry.—(a) An importer of merchandise claimed not to conform to sample or specifications or to have been shipped to him without his consent, who desires to export such merchandise with benefit of drawback, shall file with the collector of customs at the port where the merchandise was entered or at any other port a drawback entry in duplicate on customs Form 7539, stating the quantity and description of the merchandise and identifying it with the import entry. The drawback entry shall also specify the place where the merchandise is to be deposited in customs custody. If the collector is of the opinion that the place specified is not suitable for the proper examination of the merchandise and any necessary repacking, he shall require the merchandise to be delivered to a suitable place at the expense of the applicant.

Plaintiffs' first witness, Mr. Stephen Bovi, was production manager of the firm during the period of time that the merchandise was imported into this country. Paradise Manufacturing Company, the plaintiff in this case, imports and sells inflatable toys and novelties. When the merchandise at bar was received, a high defective rate was discovered. Said defects consisted of pin holes and faulty seals which prevented the toys from being properly inflated. The defective merchandise was then set aside until a volume sufficient for shipment back for credit was accumulated.

When the merchandise under drawback #89 was received, the invoice described it as "Inflatable Boxing Doll – 3 assorted – Lion, Tiger,

and Monkey". Paradise Manufacturing Co. gave the articles their own identification number, No. 4036. Said number, along with the word "Puncho" and the description "Other Dolls, NSPF" were used on customs Form 7539 when the merchandise was exported.

The merchandise under drawback #91 was described in the entry papers as "Inflatable Vinyl Toys – Sausage Dog, Comic Fox, Roly Poly Bear, Chicken with Legs, White Horse, and Duck Hund [sic] Dog". On exportation the articles were described as "Plastic Toys – 300 S Spring".

As stated above, the differences in the description of the merchandise involved in these two drawback entries were found by the drawback liquidator, Miss Murphy, to constitute a failure of identification with the import entry as required by Customs Regulation 22.32, *supra*.

The privilege of exporting with benefit of drawback imported merchandise not conforming to sample or specifications, is an exception to the general tariff policy granted by Congress. The attainment of the benefits of that privilege is conditioned upon compliance with regulations set down by the Secretary of the Treasury for the administration of that law, *America Pistachio Corp.* v. *United States*, 23 Cust. Ct. 103, C.D. 1198 (1949) ; *United States* v. *Morris European & American Express Co.*, 3 Ct. Cust. Appls. 146, T.D. 32386 (1912), said compliance being mandatory. (*Border Brokerage Company, A. G. Grasher* v. *United States*, 53 Cust. Ct. 6, C.D. 2465 (1964).)

The parties have stipulated that all regulations applicable to drawback have been complied with except for the requirement of identification of the exported merchandise to the entry papers. The question thus asked, is to what extent must a party go to identify the exported goods on customs Form 7539 in order to comply with the regulations. Plaintiffs have stated where the port of entry was, the date of the entry and on what ship the merchandise was entered, together with the entry number. Plaintiffs have also described the merchandise on Form 7539 in the same language as that used on customs Forms 7502 and 7501 respectively—when the merchandise was imported. The only difference is that the papers accompanying the Form 7539 describe the merchandise in terms of plaintiffs' business language rather than the language of the original manufacturer, the C. Itoh & Co. Ltd. of Japan.

From this it seems clear, when taken along with the original entry papers and the merchandise itself (which the parties have stipulated was delivered to customs for inspection), that there has, indeed, been a clear identification of the exported merchandise with that merchandise which was originally imported.

Furthermore, we are quite satisfied that plaintiffs have established

that the merchandise was, in fact, defective and did not conform to specifications. The unrebutted testimony was quite clear in establishing that the toys were not airtight and could not be inflated.

We hold, therefore, that plaintiffs are entitled to allowance for drawback under the provisions of section 313(c) of the Tariff Act of 1930, as amended, on the inflatable toys covered by the entries involved herein.

The protests are sustained and judgment will be rendered accordingly.